UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

CIVIL ACTION NO. 16-11739-RWZ

CHUBB NATIONAL INSURANCE COMPANY

v.

WATTS REGULATOR COMPANY

## MEMORANDUM OF DECISION

July 6, 2017

ZOBEL, S.D.J.

In this subrogation action, plaintiff Chubb National Insurance Company ("Chubb") seeks to hold defendant Watts Regulator Company ("Watts") liable for damage caused to property of Chubb's insureds. Watts has moved for summary judgment on the basis that it has no liability as a matter of law. Docket # 24.

## I. Factual Background

I summarize the relevant facts in the light most favorable to plaintiff, the non-moving party. See Planadeball v. Wyndham Vacation Resorts, Inc., 793 F.3d 169, 172 (1st Cir. 2015).

Chubb, a company incorporated in Indiana with a principle place of business in New Jersey, provided an insurance policy to Carl and Sherry Hilbert for their property in Pennsylvania. Under the terms of the policy, Chubb would become subrogated to the Hilberts' claims and rights to the extent of payments Chubb made for losses caused by third parties.

Around December 30, 2014, water leakage at the Hilberts' property caused substantial damage. The Hilberts submitted a claim to Chubb, and Chubb paid to or on behalf of the Hilberts a total of $462,475.13. The damage was caused by the failure of a connector hose that had been used as a toilet water supply line. The hose was manufactured and sold by CalFlex Manufacturing, Inc. ("CalFlex").

As relevant to the instant motion, CalFlex was incorporated in Nevada, and through 2006, had its principal place of business in California. Around 2004, CalFlex became the wholly owned subsidiary of Barbour Corporation ("Barbour"), a Massachusetts corporation with its principal place of business in Massachusetts. Barbour and CalFlex entered into a Purchase and Sale Agreement ("P&S") in 2006, under which substantially all of CalFlex's operating assets were sold to Watts.

On August 26, 2016, Chubb, as the Hilberts' subrogee, brought an action against Watts alleging product liability. Watts moves for summary judgment.

## II. Legal Standard

Summary judgment is appropriate when the moving party "shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). "An issue is 'genuine' for purposes of summary judgment if 'the evidence is such that a reasonable jury could return a verdict for the nonmoving party,' and a 'material fact' is one which 'might affect the outcome of the suit under the governing law.'" Poulis-Minott v. Smith, 388 F.3d 354, 363 (1st Cir. 2004) (quoting Hayes v. Douglas Dynamics, Inc., 8 F.3d 88, 90 (1st Cir. 1993)).

## III. Analysis

This case turns on which state's corporate successorship law applies. The

2

parties agree that if Massachusetts law governs, Watts is entitled to summary judgment; if Pennsylvania law controls, the case continues. See Docket # 31.[1]

Massachusetts "follow[s] the traditional corporate law principle that the liabilities of a selling predecessor corporation are not imposed upon the successor corporation which purchases its assets, unless" one of four exceptions applies. Guzman v. MRM/Elgin, 567 N.E.2d 929, 931 (Mass. 1991) (explaining the exceptions apply when "(1) the successor expressly or impliedly assumes liability of the predecessor, (2) the transaction is a de facto merger or consolidation, (3) the successor is a mere continuation of the predecessor, or (4) the transaction is a fraudulent effort to avoid liabilities of the predecessor"). Watts maintains that none of these exceptions apply and it is therefore not liable for the property damage under Massachusetts law.

On the other hand, Pennsylvania courts have "recognized a 'product-line' exception to the general rule against successor liability." See Cont'l Ins. Co. v. Schneider, Inc., 873 A.2d 1286, 1291 n.8 (Pa. 2005). This exception "permits successor liability to be imposed for injuries caused by defective products manufactured by a predecessor if the successor continues to manufacture the product." Id. Chubb contends that under Pennsylvania law, Watts can be held "liable for a defective product manufactured by CalFlex in a product line continued by Watts," Docket # 27, at 14.

A. **Choice of Law Analysis**

Federal courts sitting in diversity, as here, apply state substantive law. See Crellin Techs., Inc. v. Equipmentlease Corp., 18 F.3d 1, 4 (1st Cir. 1994) (citing Erie

---

[1] This representation was made by Watts's counsel. In any event, Chubb has not argued that if Massachusetts law applies, Watts is not entitled to summary judgment.

3

R.R. Co. v. Tompkins, 304 U.S. 64, 78 (1938)). "In determining what state law pertains, the court must employ the choice-of-law framework of the forum state," here, Massachusetts. Id.

"Historically, in tort cases, Massachusetts applied the substantive law of the state where the alleged wrong occurred. . . . In the last few decades, however, Massachusetts has moved to a 'functional' approach for addressing choice of law issues." Robidoux v. Muholland, 642 F.3d 20, 25 (1st Cir. 2011) (citations omitted). "This functional approach 'responds to the interests of the parties, the States involved, and the interstate system as a whole.'" Id. (quoting Bushkin Assocs., Inc. v. Raytheon Co., 473 N.E.2d 662, 668 (Mass. 1985)). In implementing the functional approach, Massachusetts courts "'assess[] various choice-influencing considerations,' . . . including those provided in the Restatement (Second) of Conflict of Laws (1971), and those suggested by various commentators." Cosme v. Whitin Mach. Works, Inc., 632 N.E.2d 832, 834 (Mass. 1994) (quoting Bushkin, 473 N.E.2d at 668).

"The Second Restatement provides that, in personal injury cases, 'the local law of the state where the injury occurred determines the rights and liabilities of the parties, unless, with respect to the particular issue, some other state has a more significant relationship under the principles stated in § 6 to the occurrence and the parties.'" Robidoux, 642 F.3d at 25 (quoting Restatement (Second) Conflict of Laws § 146 (1971) [hereinafter "Restatement"]). Under § 6(2) of the Restatement, "the factors relevant to the choice of the applicable rule of law include":

    (a) the needs of the interstate and international systems,
    (b) the relevant policies of the forum,
    (c) the relevant policies of other interested states and the relative interests

4

of those states in the determination of the particular issue,
(d) the protection of justified expectations,
(e) the basic policies underlying the particular field of law,
(f) certainty, predictability and uniformity of result, and
(g) ease in the determination and application of the law to be applied.

Restatement § 6(2).

The Massachusetts Supreme Judicial Court has also considered "the five considerations proposed by Professor Leflar in American Conflicts Law." Bushkin, 473 N.E.2d at 670 (citing R.A. Leflar, American Conflicts Laws § 96, at 195 (3d ed. 1977)). "These five factors are: '(A) Predictability of results; (B) Maintenance of interstate and international order; (C) Simplification of the judicial task; (D) Advancement of the forum's governmental interests; (E) Application of the better rule of law.'" Id. at 670 n.7 (quoting Leflar § 96, at 195). They "generally parallel the considerations contained in longer lists, including § 6(2) of the Second Restatement." Id. at 670.

Further, "the law of a single jurisdiction is not necessarily to be applied to all issues in a particular case." Robidoux, 642 F.3d at 26 (quoting Lou v. Otis Elevator Co., 933 N.E.2d 140, 151 n.27 (Mass. App. Ct. 2010)); see also Restatement § 145 cmt. d ("The courts have long recognized that they are not bound to decide all issues under the local law of a single state."). Rather, "[e]ach issue is to receive separate consideration if it is one which would be resolved differently under the local law rule of two or more of the potentially interested states." Restatement § 145 cmt. d. Courts "should weigh the relevant considerations 'according to their relative importance to the particular issue involved.'" Robidoux, 642 F.3d at 26 (quoting Lou, 933 N.E.2d at 151).

**B.    Application**

Here, the relevant dispute between the parties is which state's law applies to

5

Watts's liability; that is, which state's corporate successorship law applies. This is a distinct question from which state's product liability law applies. As the Restatement comments have explained, "subject only to rare exceptions, the local law of the state where conduct and injury occurred will be applied to determine whether the actor satisfied minimum standards of acceptable conduct and whether the interest affected by the actor's conduct was entitled to legal protection." Restatement § 145 cmt. d. "On the other hand, the local law of the state where the parties are domiciled, rather than the local law of the state of conduct and injury, may be applied to determine whether one party is immune from tort liability to the other . . . ." Id. Accordingly, I analyze the choice of law question as it relates to corporate successorship, not the underlying tort claim. Cf. Carriero v. Rhodes Gill & Co., No. 91-cv-10515-RGS, 1995 WL 866092, at *2 (D. Mass. Jan. 13, 1995) ("[Plaintiff] argues that Massachusetts has the greater interest in the proceeding because the accident occurred in Massachusetts. This, however, is beside the point because the controversy to be decided involves Main's corporate identity and not the ultimate issue of product liability."); Restatement § 145 cmt. d ("[W]hether a charitable corporation can successfully assert the defense of charitable immunity may be determined by the local law of the state where the plaintiff is domiciled and the defendant incorporated rather than by the local law of the state where conduct and injury occurred. . . .").[2]

---

[2] Chubb claims that "First Circuit precedent indicates that [this] approach . . . . is simply not the law of this Circuit," Docket # 27, at 7, and points to a footnote in Rodríguez-Miranda v. Benin, 829 F.3d 29 (1st Cir. 2016). However, in Rodríguez-Miranda, the First Circuit found that "that the district court did not plainly err in applying Puerto Rico law" when determining whether "appellants [were] alter egos of one another." 829 F.3d at 43 & n.18. The First Circuit noted that "[a]pplying Puerto Rico's choice of law rules, the district court reasonably determined that Puerto Rico had the 'most significant contacts' with the action," and then cited relevant considerations for the choice of law analysis. Id. at 43 n.18. Based on this footnote, Chubb maintans that "the First Circuit did not suggest that under the Restatement approach,

Examining the Restatement factors as well as those set forth by Professor Leflar, I conclude Massachusetts law governs the corporate successorship question.[3] First, Massachusetts, the forum state, has "decline[d] to adopt the product line theory of recovery," with the SJC explaining why it did not agree with the justifications given for this exception. Guzman, 567 N.E.2d at 931–33. Second, although the injury occurred in Pennsylvania, none of the parties are Pennsylvania citizens; Chubb, the plaintiff, is a citizen of Indiana and New Jersey. Therefore, Pennsylvania's interest in the issue is diminished under the facts of this subrogation case. Third, and relatedly, applying Massachusetts law leads to more predictable results for Watts and better serves to protect its expectations. Specifically, Watts has an expectation that under the P&S and Massachusetts law, it would not be held liable for products manufactured by CalFlex. Chubb, however, has no particular expectation as to what corporate successorship law would be applied in its subrogation actions, as it is a national insurance company. Indeed, in declining to adopt the "product line theory of recovery" Massachusetts joined the majority of state courts that have considered the issue. See Guzman, 567 N.E.2d at 931.

---

corporate successorship should have been analyzed separate from the underlying tort." Docket # 27, at 8. However, in Rodríguez-Miranda, the underlying causes of action had already been adjudicated, see id. at 34, and the parties did not dispute that the choice of law analysis for the corporate identity question could (or should) be separate. Accordingly, the footnote in Rodríguez-Miranda has no bearing on the decision here. Further, the First Circuit has already made clear, in a case where Massachusetts was the forum state, that "the law of a single jurisdiction is not necessarily to be applied to all issues in a particular case." Robidoux, 642 F.3d at 26 (quoting Lou, 933 N.E.2d at 151 n.27).

[3] "Because some of these factors are either redundant or not determinative, [I] focus on 'considerations particularly relevant to the case.'" Jasty v. Wright Med. Tech., Inc., 528 F.3d 28, 40 (1st Cir. 2008) (quoting Reicher v. Berkshire Life Ins. Co. of Am., 360 F.3d 1, 5 (1st Cir. 2004)).

## IV. Conclusion

Watts's motion for summary judgment (Docket # 24) is ALLOWED as to the choice of law issue. Chubb as 14 days from the date of this decision to explain why, in light of this ruling, summary judgment should not be entered for Watts.

|  |  |
|---|---|
| July 6, 2017 | /s/Rya W. Zobel |
| DATE | RYA W. ZOBEL<br>SENIOR UNITED STATES DISTRICT JUDGE |